**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**ESTATE OF J. C. AINSWORTH, JR.,
by PATRICIA AINSWORTH, ADMINISTRATRIX**                          **PLAINTIFFS**

**VERSUS**                                      **CIVIL ACTION NO. 2:10-CV-288-KS-MTP**

**GARY N. BOUTWELL, II;
ANDERSON & BOUTWELL, LTD.**                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

The Court now addresses Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [7]. For the reasons stated below, the Court **grants** the motion. Accordingly, this case is dismissed without prejudice.

### I. BACKGROUND

Christopher Shows, a Louisiana resident, was involved in a motor vehicle accident in Hammond, Louisiana, on or about August 5, 2005. He contacted a family friend – J. C. "Jack" Ainsworth, Jr. – to retain his representation with regard to legal claims arising from the accident. Ainsworth advised Shows that he needed to retain a Louisiana law firm to assist in the litigation, as Ainsworth was not licensed to practice in Louisiana. Accordingly, Ainsworth contacted Defendant Gary N. Boutwell, and they entered into a fee-splitting arrangement in which Defendants would represent Shows in his Louisiana litigation in exchange for two-thirds of his fees and costs, while Ainsworth received one-third of the fees and costs.

Defendants pursued multiple legal actions on Shows' behalf. The first action – against State Farm Mutual Automobile Insurance Company – settled for $25,000.00. On December 1, 2006, Defendants tendered a check in the amount of $3,333.33 to Ainsworth for his share of the fees.

Ainsworth died on January 3, 2008, and Defendants continued to pursue claims on behalf of Shows in the state of Louisiana. In November 2010, Shows settled his remaining claims for $350,000.00. Ainsworth's Estate filed its Complaint [1] on December 3, 2010, claiming that it is due one-third of the fees recovered from Shows' November 2010 settlement. On January 25, 2011, Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction [7], which the Court now addresses.

## II. DISCUSSION

### A.    *Rule 12(b)(6) Standard*

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). However, where the Court "rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a *prima facie* case that jurisdiction is proper." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citing *Quick Techs., Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002)). While the Court is not limited to consideration of only the allegations in the plaintiff's complaint, it must accept the "uncontroverted allegations" contained therein as true. *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 2005)).

A "federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth

2

amendment to the United States Constitution." *Allred*, 117 F.3d at 281 (quoting *Cycles, Ltd. v. W. J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)). As the due process prong of the analysis is determinative in this case, the Court shall not address Mississippi's long-arm statute.

### B.     *Due Process*

"Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction does not offend traditional notions of fairplay and substantial justice." *Paz*, 445 F.3d at 813 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)); *see also Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citing *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002)).

"There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction." *Clemens*, 615 F.3d at 378 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). General personal jurisdiction exists where "a defendant has continuous and systematic general business contacts with the forum state." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). There is no evidence in the record to suggest that Defendants have "continuous and systematic general business contacts" in Mississippi, and Plaintiff does not argue such. Rather, Plaintiff argues that Defendants' specific actions relating to the present case are sufficient to justify the Court's exercise of specific personal jurisdiction over them.

Generally, "[s]pecific personal jurisdiction exists when 'the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Clemens*, 615 F.3d at 378 (citing *Burger King Corp. v.*

3

*Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n. 9 (5th Cir. 1992)). The Fifth Circuit Court of Appeals has articulated a three pronged analysis for determining whether the Court has specific personal jurisdiction over a defendant:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin*, 587 F.3d at 759 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 382 (5th Cir. 2002)).

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct is such that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)); *see also Clemens*, 615 F.3d at 378. To support a finding of specific personal jurisdiction, it is "essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Clemens*, 615 F.3d at 379 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). "[R]andom, fortuitous, or attenuated contacts" are not sufficient. *Id.* (citing *Burger King Corp.*, 471 U.S. at 472, 105 S. Ct. 2174). Further, "[t]he defendant 'must not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or third persons.'" *McFadin*, 587 F.3d at 759.

4

Plaintiff argues that Defendants intentionally pursued business activity in the state of Mississippi by entering into a fee-splitting arrangement with Ainsworth. Plaintiff asserts that Defendants communicated with Ainsworth through telephone, e-mail, and traditional mail. Defendants do not deny that they entered into a fee-splitting agreement with Ainsworth[1] or that they communicated with him regarding that agreement. Rather, they argue that their actions do not constitute sufficient contacts with Mississippi to justify the Court's exercise of personal jurisdiction over them. The Court agrees with Defendants.

Defendants do not practice law or otherwise do business in Mississippi. Indeed, they are not licensed to practice law in Mississippi. They do not own property in Mississippi or maintain an office here. The record shows that Ainsworth solicited their involvement in Shows' case, rather than Defendants soliciting Shows' business or Ainsworth's partnership in Shows' litigation. Further, it is undisputed that all of Shows' claims were prosecuted in Louisiana courts. No discovery was conducted in Mississippi, and no pleadings were filed here. Therefore, the evidence currently in the record shows that Defendants performed their side of the contract – representing Shows – in Louisiana alone.

The only connection Defendants have with the state of Mississippi is that they entered into a contract with a resident of this state and communicated with him regarding the terms and performance of that contract. Plaintiff argues that this is sufficient to justify the exercise of personal jurisdiction. However, the Fifth Circuit Court of Appeals has explicitly held that "merely contracting with a resident of the forum state does not establish minimum contacts." *Id.* at 760 (citing *Moncrief*

---

[1] To be clear, Defendants dispute Plaintiff's characterization of the terms of that arrangement. However, for the purposes of this motion, the specific terms of the agreement are irrelevant, and the Court makes no findings regarding them.

*Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Burger King Corp.*, 471 U.S. at 478, 105 S. Ct. 2174). Furthermore, "communications relating to the performance of a contract themselves are insufficient to establish minimum contacts." *Id.* (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004)).

The Fifth Circuit has addressed a case with facts similar to those of the present case. In *McFadin*, a Texas handbag manufacturer brought tort and contract claims against a sales representative from Colorado. *Id.* at 757. The issue before the Fifth Circuit was whether a Texas district court had personal jurisdiction over the Colorado defendant. *Id.* at 760. The plaintiff had entered into a sales representation contract with the defendant. *Id.* at 757. There had been significant communications between the parties – including sales orders and payments. *Id.* at 760. The defendant sold some of the plaintiffs' handbags to Texas residents. *Id.* at 757. However, the defendant "never took orders in Texas," and only $40,000.00 out of over $1,000,000.00 in sales were from Texas-based retailers. *Id.*

The Fifth Circuit observed that the contract centered on the defendant's operations outside Texas. *Id.* at 760. The plaintiffs had approached the defendant about selling their handbags in Colorado, as the defendant's sales region explicitly focused on the Rocky Mountain States. *Id.* Indeed, the plaintiffs traveled to Colorado to establish the contract with the defendant. *Id.* The defendant never traveled to Texas to sell the plaintiffs' handbags. *Id.* "The entire purpose of the agreement was to open up markets outside of Texas to [the plaintiffs'] handbags." *Id.* Therefore, the contract was formed and performed outside of Texas. *Id.* at 761. What little contact the defendants had with Texas "came only from the fortuity of the plaintiffs' residence there." *Id.* Therefore, there were insufficient contacts with Texas to establish personal jurisdiction. *Id.*

This case, like *McFadin*, centers on a contract. Ainsworth solicited Defendants' services on behalf of Shows. Defendants' performance of the contract was wholly within the state of Louisiana. Indeed, the purpose and intent of the contract – according to the evidence before the Court – was for Defendants to represent Shows in Louisiana litigation. While Defendants communicated with Ainsworth, they never traveled to Mississippi or otherwise conducted business here. In short, what little contact Defendants had with Mississippi "came only from the fortuity of the plaintiffs' residence" here. *Id.*[2]

Plaintiffs rely heavily on *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (1982). They argue that the Fifth Circuit held that a nonresident defendant established sufficient contacts merely by entering into a telephonic oral contract with a Mississippi business to deliver shipments between states other than Mississippi. However, Plaintiffs' characterization of *Transpo* is inaccurate. The Fifth Circuit found that Mississippi was "clearly the hub of the parties' activities." *Id.* at 1011; *see also McFadin*, 587 F.3d at 761 (distinguishing *Transpo*). "That case addressed the

---

[2] Mississippi courts generally apply the principles set out in the Restatement (Second) of Conflicts of Laws Section 188 to contract disputes. *Powe v. Roy Anderson Constr. Co.*, 910 So. 2d 1197, 1202 (Miss. Ct. App. 2006) (citing *O'Rourke v. Colonial Ins. Co.*, 624 So. 2d 84, 86 (Miss. 1993)); *see also Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 434 (Miss. 2006). Section 188 provides that the Court should consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2)(a)-(e) (1971). Subsections (c) and (d) clearly weigh in favor of Louisiana, and subsection (e) is a stalemate between Mississippi and Louisiana. Therefore, it is arguable that Louisiana law would apply to the contract in this case. The Court makes no explicit finding as to that issue. However, that it is at least arguable that Louisiana law applies to the contract lends support to the Court's conclusion that Defendants do not have sufficient contacts with Mississippi to justify the exercise of personal jurisdiction. *See McFadin*, 587 F.3d at 760 n. 19 (court noted there was a strong argument that Colorado law applied to the contract, as the Restatement's factors pointed to Colorado as state with most significant relationship).

context of interstate trucking, where there was no 'clear local nexus with any particular jurisdiction.'" *McFadin*, 587 F.3d at 761 (quoting *Transpo*, 681 F.2d at 1011). Therefore, the nonresident defendant's telephone calls to Mississippi – directing a Mississippi company to ship goods from one part of the country to another, using trucks housed and serviced at a Mississippi headquarters – were sufficient to establish Mississippi as the hub of the parties' activities. *Transpo*, 681 F.2d at 1011.

This case involves a fee-splitting agreement stemming from litigation in Louisiana courts. Shows, the client, was a Louisiana resident. Defendants' services were to be performed in Louisiana. The accident which led to the litigation occurred in Louisiana. Defendants did not seek out the contract at issue in this case; rather, Ainsworth contacted them. The Defendants have no connection to Mississippi beyond the fact that they communicated and contracted with a Mississippi resident, and that is insufficient to establish personal jurisdiction. *See McFadin*, 587 F.3d at 760.

Plaintiffs also rely on *Knight v. Woodfield*, No. 2009-IA-01371-SCT, 2011 Miss. LEXIS 6 (Miss. Jan. 6, 2011). In *Knight*, a Mississippi plaintiff filed an alienation of affection claim against a Louisiana defendant. *Id.* at *1-*2. The Mississippi Supreme Court found that the Louisiana defendant's numerous phone calls and text messages to a Mississippi resident (the plaintiff's wife) over the course of two months were sufficient to establish the minimum contacts necessary under federal law. *Id.* at *11 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The court noted that the defendant "'purposefully directed' his actions at a resident of the forum" and the case resulted from "the alleged injuries that 'arose out of or relate to' Knight's actions." *Id.* (citing *Burger King Corp.*, 471 U.S. at 472, 105 S. Ct. 2174).

Plaintiffs argue that *Knight* stands for the prospect that communications with a forum state

8

can constitute sufficient contacts to justify the exercise of personal jurisdiction over a nonresident defendant. However, the present case is distinguishable from *Knight* insofar as there is no evidence that Defendants purposefully directed their actions at a resident of Mississippi, as the *Knight* defendant did. The evidence shows that Ainsworth initiated the contractual relationship. Further, *Knight* was a tort case in which the tortious act was the communication. In the present case, the communications directed at Ainsworth did not constitute the alleged breach of contract or the performance of the contract.

### III. CONCLUSION

For all the reasons stated above, the Court finds that Plaintiffs have failed to show that Defendants have sufficient contacts with Mississippi to justify the exercise of personal jurisdiction in this case. Accordingly, the case is dismissed without prejudice.

**SO ORDERED AND ADJUDGED** this 4th day of March, 2011.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE